**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

NATIONWIDE PROPERTY & CASUALTY,

           Plaintiff,

v.                                           CIVIL ACTION NO. 2:06-cv-00616

BILLY A. COMER, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' Motion for Partial Summary Judgment [Docket 15]. For reasons set forth below, the motion is **DENIED**. In addition, the court **GRANTS** partial summary judgment in favor of the plaintiff, Nationwide Property & Casualty Insurance Co.

**I. Background**

This is an action for declaratory relief brought by Nationwide Property & Casualty Insurance Co. ("Nationwide") against its policyholders, James N. Cable and Donna F. Moore, and against Billy A. Comer, Cara B. Comer, and Harold Cathey. Jurisdiction is based on diversity. Nationwide seeks a declaration that it is not obligated to indemnify or defend Cable and Moore for any losses incurred as a result of a lawsuit brought against them by the Comers.

Nationwide issued Cable and Moore a homeowner's insurance policy with a term running from January 4, 2005, to January 6, 2006. (Compl. Ex. 1, at 3 [Docket 1].) The liability portion of the policy provided that Nationwide would "pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership,

maintenance, or use of real or personal property." (Compl. Ex. 1, at 3.) The policy defined "occurrence" as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." (Compl. Ex. 1, at 3.) "Property damage" is defined as "physical injury to or destruction of tangible property. This includes its resulting loss of use." (Compl. Ex. 1, at 3.)

On March 15, 2005, Cable and Moore sold a home, which they had constructed and that was the subject of the insurance policy, to Billy A. Comer and Cara B. Comer. (Am. Compl. Ex. 1 ¶ 1-5 [Docket 23].) After the sale of the house, the Comers allegedly discovered "numerous and serious construction defects," including faulty wiring, improperly installed plumbing, poor water drainage, and an unstable foundation. (Am. Compl. Ex. 1 ¶ 7.) The Comers filed suit against Cable and Moore in the Circuit Court of Kanawha County, West Virginia, alleging, among other things, that Cable and Moore breached "an implied warranty of habitability or fitness."[1] (Am. Compl. Ex. 1 ¶ 8.)

On August 8, 2006, Nationwide filed this declaratory judgment action. (Compl. [Docket 1].) Nationwide seeks a declaration that it is not obligated to defend or indemnify Cable and Moore because the Comers' lawsuit does not trigger coverage under the terms of Cable and Moore's insurance policy. (Am. Compl. [Docket 23].) In the instant motion for summary judgment, however, the Comers request the court find that any liability arising out of Count I of their state court complaint is covered by the policy.[2] (Def.'s Mot. Summ. J. [Docket 15].) Count I alleges that Cable

---

[1] The Comers later amended their complaint to add further counts and an additional defendant. These other counts and defendant are not relevant to the pending motion and will not be addressed at this time.

[2] The motion at issue was filed before the Comers amended their state court complaint and before Nationwide amended its federal court complaint. Accordingly, the parties have focused on Count I of the original state court complaint, which is identical to Count I of the

and Moore's faulty construction of the home they sold to the Comers constitutes a breach of an implied warranty of habitability. (Def.'s Mem. 3.) The Comers argue that this breach is covered by the liability portion of Cable and Moore's policy because the term "occurrence," as defined in the policy, is ambiguous and should be construed broadly in favor of the policyholders (Def.'s Mem. 5.) In response, Nationwide asserts that the policy covers only damages that are the result of negligence. Because Count I alleges a breach of warranty rather than negligence, Nationwide maintains that Count I is not covered by the policy. (Pl.'s Resp. 3.) Nationwide also argues that even if Count I alleges negligence, a breach of an implied warranty of habitability is not an "occurrence." (Pl.'s Resp. 4.)

**II. Standard of Review**

When a federal court's jurisdiction is based on diversity, it must apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The standard for summary judgment is procedural; therefore, the federal standard applies. *Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc.,* 622 F.2d 90, 93 n.5 (4th Cir. 1980). To obtain summary judgment, the moving party must show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a

---

amended state court complaint.

reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. Discussion

In a diversity action, state law controls the construction of the insurance policy. *Knight v. Am. Nat. Fire Ins. Co.*, 831 F. Supp. 1284, 1287 (D.S.C. 1993). In West Virginia, insurance policy language is given its "plain, ordinary meaning." *Aluise v. Nationwide Mut. Fire Ins. Co.*, 625 S.E.2d 260, 267-68 (W. Va. 2005) (citing *Soliva v. Shand, Morahan & Co.*, 345 S.E.2d 33, Syl. Pt. 1 (1986)). Moreover, "where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Id.* at 268. Conversely, ambiguities in insurance policy language are resolved against the insurer. *Zurich Ins. Co. v. Uptowner Inns, Inc.*, 740 F. Supp. 404, 407 (S.D. W. Va. 1990). The Comers argue that because a breach of an implied warranty of habitability can occur by either accidental or intentional means, the definition of "occurrence" is ambiguous and the ambiguity must be resolved in favor of coverage. (Def.'s Mem. 5.)

The West Virginia courts have not addressed whether a breach of an implied warranty of habitability is an "occurrence" when that term is defined as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." Because there is no West Virginia state law addressing the issue, this court "must predict

-4-

how West Virginia state courts would act if confronted with" it. *Jackson v. Allstate Ins. Co.*, 132 F. Supp. 2d. 432, 434 (N.D. W. Va. 2000) (citing *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994)). West Virginia courts have, however, addressed analogous issues. In *Aluise v. Nationwide Mutual Fire Insurance Co.,* 625 S.E.2d 260 (W. Va. 2005), the West Virginia Supreme court of Appeals held that "an insured homeowner who is sued by a home buyer for economic losses caused because the insured negligently or intentionally failed to disclose defects in the home" is not covered by a policy that defines "occurrence" as "bodily injury or property damage resulting from an accident." *Aluise*, 625 S.E.2d at 268-69. The court reasoned that "damages flowing from misrepresentation and/or fraud have no basis as property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by homeowners policies." *Id.* at 268 (citing *State Farm Fire & Cas. Co. v. Brewer*, 914 F. Supp. 140, 142 (S.D. Miss. 1996)). Moreover, the court noted that to find coverage existed in that case "would be to find that based on an act of sale, a homeowner's insurer becomes the warrantor of the condition of the insured property. This is not the type of coverage which is contemplated by homeowner's policies." *Id.* at 269 (citing *Lawyer v. Kountz*, 716 So.2d 493, 498 (La. Ct. App. 1998)).

      This same reasoning applies in the present case. Under West Virginia law, "the purchaser of a new home is entitled to an implied warranty of habitability or fitness which requires that the dwelling be constructed by the builder in a workmanlike manner and that the property be reasonably fit for its intended use of human habitation." *Gamble v. Main*, 200 S.E.2d 110, 111 (W. Va. 1983). In other words, the builder-vendor of a new home impliedly promises to the buyer that the house will be constructed in a workmanlike manner. The breach of this promise, like the negligent misrepresentation in *Aluise*, does not itself cause property damage. The Comers seeks damages for

repairs to the house they bought. (Am. Compl. Ex. 1 ¶ 68.) They also seek recision of their contract with Cable and Moore. (Am. Compl. Ex. 1 ¶ 70.) These remedies are "economic and contractual in nature" and thus not covered by Cable and Moore's insurance policy. As in *Aluis*e, by issuing a homeowner's insurance policy, Nationwide did not become the warrantor of the condition of Cable and Moore's property.

It is also important to recognize that this case involves third-party liability insurance. In *Erie Ins. Property & Cas. Co. v. Pioneer Home Improvement, Inc.*, 526 S.E.2d 28 (W. Va. 1999), the West Virginia Supreme Court of Appeals discussed the purpose of liability insurance, albeit in the context of commercial general liability ("CGL") policies. The court noted that "[t]hese policies do not insure the work or workmanship which the contractor or builder performs. They are not performance bonds or builders' risk policies. CGL policies, instead, insure personal injury or property damage arising out of the work." *Pioneer Home Improvement*, 526 S.E.2d at 33. Further, "CGL policies of insurance do not provide protection for poor workmanship; instead, these policies protect an insured from liability due to personal injury or property damage to others caused by the insured's negligence." *Id.* In coming to this conclusion, the court found the following example instructive:

> When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling, and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case.

*Id.* (citing *Weedo v. Stone-E-Brick, Inc*. 405 A.2d 788, 796 (1979)).

For these same reasons, a breach of an implied warranty of habitability is not an

"occurrence" for the purposes of the liability portion of a homeowner's insurance policy. Like a CGL, the liability insurance policy here was designed to provide coverage for "tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the products or completed work is not that for which the damaged person bargained." *Id.* (citing Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations - What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971)). The Comers' complaint is not that other property of theirs was damaged by, for instance, a fire caused by faulty wiring, but rather that they did not get the house they bargained for. "[P]oor workmanship," however, "standing alone, cannot constitute an 'occurrence' under the standard policy definition of this term as an 'accident including continuous or repeated exposure to substantially the same general harmful conditions." *Corder v. William W. Smith Excavating Co.*, 556 S.E.2d 77, 83 (W. Va. 2001).[3]

**IV. Conclusion**

Based on the principles developed in *Aluise* and *Pioneer Home Improvement*, the court **FINDS** that if the West Virginia courts were to address the issue, they would find that a breach of an implied warranty of habitability is not an "occurrence" as the term is defined in Cable and Moore's insurance policy. Accordingly, the court **FINDS** that the Comers are not entitled to partial summary judgment. The court therefore **DENIES** the Comers' Motion for Partial Summary Judgment [Docket 15]. Having found as a matter of law that the insurance policy at issue does not cover damages for a breach of an implied warranty of habitability, and because Nationwide seeks

---

[3] It makes no difference that CGL policies typically contain "business-risk exclusions" whereas the insurance policy here does not. The court in *Corder* came to its conclusion without reference to the business-risk exclusion and only discussed policy exclusions after discussing the definition of "occurrence." *Corder*, 556 S.E.2d at 83, 84.

a declaration that there is no insurance coverage, the court *sua sponte* **GRANTS** partial summary judgment in favor of Nationwide. That is, pursuant to Federal Rule of Civil Procedure 56(c), the court **FINDS** that Nationwide is entitled to judgment as a matter of law that it has no obligation to indemnify Cable and Moore for damages arising under Count I of the Comers' state court complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence.").

The court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented party.

ENTER: October 22, 2007

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge