**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

NATIONWIDE PROPERTY & CASUALTY,

Plaintiff,

v. CIVIL ACTION NO. 2:06-cv-00616

BILLY A. COMER, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's unopposed Motion for Summary Judgment [Docket 38]. For reasons set forth below, the motion is **GRANTED**.

**I. Background**

This is an action for declaratory relief brought by Nationwide Property & Casualty Insurance Co. ("Nationwide") against its policyholders, James N. Cable and Donna F. Moore, and against Billy A. Comer, Cara B. Comer, and Harold Cathey. Jurisdiction is based on diversity. Nationwide seeks a declaration that it is not obligated to indemnify or defend Cable and Moore for any losses incurred as a result of a state-court lawsuit brought against them by the Comers or as a result of a state-court cross-claim brought against them by Cathey.

A. Factual Background

The subject of this case is a house constructed by defendants Cable and Moore in St. Albans, West Virginia. (Am. State-Court Compl. ¶ 2-5, Am. Compl. Ex. 1 [Docket 23].) Cable and Moore insured this house pursuant to a homeowner's insurance policy issued by Nationwide. (Compl. Ex. 1, at 3 [Docket 1].) The liability portion of the policy provided that Nationwide would "pay damages

an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance, or use of real or personal property." (*Id.* at G1.) The policy defined "occurrence" as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." (*Id.*) "Property damage" is defined as "physical injury to or destruction of tangible property." (*Id.*) This definition includes its "resulting loss of use." (*Id.*)

On March 15, 2005, Cable and Moore sold the house to the Comers. (Am. State-Court Compl. ¶ 1-5.) After the sale of the house, the Comers allegedly discovered "numerous and serious construction defects," including faulty wiring, improperly installed plumbing, poor water drainage, and an unstable foundation. (*Id.* ¶ 7.) The Comers filed suit against Cable, Moore, and Cathey in the Circuit Court of Kanawha County, West Virginia. (*See generally id.*) The complaint alleged that Cable and Moore: 1) breached an implied warranty of habitability or fitness; 2) breached express promises and warranties; 3) failed to disclose to the Comers known construction defects; 4) fraudulently misrepresented the age of the house; 5) caused the Comers to suffer irreparable damages by breaching express promises and warranties; 6) caused the Comers to suffer irreparable damages by engaging in fraud and failure to disclose; 7) negligently constructed the house; and 8) breached an implied warranty of habitability and fitness; 9) negligently failed to disclose defects to the Comers; and 10) negligently hired unqualified or careless contractors. (*See generally id.*) The Comers also allege that Cathey breached an implied warranty and engaged in negligence in excavating the site of the house. (*Id.* at ¶ 55-67.) Cathey filed a cross-claim against Cable and Moore, alleging that if the Comers were injured, it was the fault of Cable and Moore, and that Cable

and Moore were required to indemnify him if a judgment was returned against him in state court. (Cross-cl., Am. Compl. Ex. 2.)

B. Procedural Background

On August 8, 2006, Nationwide filed this declaratory judgment action. (Compl. [Docket 1].) Nationwide seeks a declaration that it is not obligated to defend or indemnify Cable and Moore because neither the Comers' lawsuit nor Cathey's cross-claim triggers coverage under the terms of Cable and Moore's insurance policy. (Am. Compl. [Docket 23].) On August 9, 2007, the Comers moved for partial summary judgment. (*See* Mot. Partial Summ. J. [Docket 15].) In this motion, the Comers requested that the court find that if Cable and Moore were liable for breach of an implied warranty of habitability or fitness, such liability was covered by Cable and Moore's insurance policy with Nationwide. In a Memorandum Opinion and Order filed on October 22, 2007, this court denied the Comers' motion. (*See* Mem. Op. & Order [Docket 34].) Instead, the court *sua sponte* granted summary judgment in favor of Nationwide, holding as a matter of law that Nationwide had no obligation to indemnify Cable and Moore for any liability arising out of a breach of an implied warranty of habitability or fitness under Count I of the state-court complaint. (*Id.* at 7-8.)

Approximately three months after the court issued its opinion, Nationwide filed the pending motion for summary judgment. (*See* Nationwide's Mot. Summ. J. [Docket 38].) Nationwide argues that it is not obligated to indemnify or defend Cable and Moore for any liability based on the allegations in the Comers' state-court complaint or Cathey's cross-claim. The defendants have not responded to Nationwide's motion.

C. Prior Memorandum Opinion & Order

As discussed above, I previously granted summary judgment in favor of the plaintiff, Nationwide. In that Memorandum Opinion & Order, I found that under West Virginia law, a breach of an implied warranty of habitability or fitness, as described in Count I of the amended state-court complaint, was not an "occurrence" as defined in Cable and Moore's insurance policy. (Mem. Op. & Order 7.) As a consequence, I found that Nationwide had no obligation to indemnify Cable and Moore for damages arising under Count I of the state-court complaint. (*Id.* at 8.)

In coming to this conclusion, I noted that "West Virginia courts have not addressed whether a breach of an implied warranty of habitability is an 'occurrence' when that term is defined as 'bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition.'" (*Id.* at 4.) Thus, I predicted how West Virginia courts would act if confronted with that issue. (*Id.* at 4-5.) I first looked to *Aluise v. Nationwide Mutual Fire Insurance Co.*, 625 S.E.2d 260 (W. Va. 2005). (*Id.* at 5.) There, the West Virginia Supreme Court of Appeals held that "an insured homeowner who is sued by a home buyer for economic losses caused because the insured negligently or intentionally failed to disclose defects in the home" is not covered by a policy that defines "occurrence" as "bodily injury or property damage resulting from an accident." *Aluise*, 625 S.E.2d at 268-69. Using *Aluise* as a basis for comparison, I determined that the breach of an implied warranty of habitability or fitness does not cause property damage. (Mem. Op. & Order 5.) Rather, the Comers sought contractual and economic remedies that "do not fall within the scope of coverage afforded by homeowners policies." (*Id.* (citing *Aluise*, 625 S.E.2d at 268).)

I also compared Cable and Moore's homeowner's insurance policy with commercial general liability policies ("CGLs"). (*Id.* at 6.) I reasoned that like a CGL policy, the liability portion of a homeowner's insurance policy "was designed to provide coverage for 'tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the products or completed work is not that for which the damaged person bargained.'" (*Id.* at 7 (citing *Erie Ins. Property & Cas. Co. v. Pioneer Home Improvement, Inc.*, 526 S.E.2d 28, 33 (W. Va. 1999).) Finally, I noted that poor workmanship, standing alone, does not constitute an occurrence under the standard definition of that term in CGLs, and likewise liability for poor workmanship is not an occurrence as defined in the liability portion of Cable and Moore's homeowner's insurance policy. (*Id.*)

**II. Standard for Summary Judgment**

When a federal court's jurisdiction is based on diversity, it must apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The standard for summary judgment is procedural; therefore, the federal standard applies. *Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc.*, 622 F.2d 90, 93 n.5 (4th Cir. 1980). To obtain summary judgment, the moving party must show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**III. Discussion**

In a diversity action, state law controls the construction of the insurance policy. *Knight v. Am. Nat. Fire Ins. Co.*, 831 F. Supp. 1284, 1287 (D.S.C. 1993). In West Virginia, insurance policy language is given its "plain, ordinary meaning." *Aluise*, 625 S.E.2d at 267-68 (citing *Soliva v. Shand, Morahan & Co.*, 345 S.E.2d 33, Syl. Pt. 1 (1986)). Moreover, "where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Id.* at 268. Conversely, ambiguities in insurance policy language are resolved against the insurer. *Zurich Ins. Co. v. Uptowner Inns, Inc.*, 740 F. Supp. 404, 407 (S.D. W. Va. 1990).

In its motion for summary judgment, Nationwide argues that it has no duty to defend or indemnify Cable and Moore under their homeowner's insurance policy with regard to the nine counts asserted against Cable and Moore by the Comers and the two cross-claim counts asserted by Cathey. (Nationwide's Mem. at 2.) According to Nationwide, no duty exists because none of the counts asserted by the Comers qualify as an "occurrence" as defined by the insurance policy. (*Id.*)

Nationwide has placed the state-court counts against it into five groups and makes its arguments with respect to each group. I will address the groups one by one.

A. Count II of the State-Court Complaint

In Count II of the amended state-court complaint, the Comers allege that Cable and Moore promised them "that they would repair said defects or pay to have said defects repaired" and that the promises constitute express warranties. (Am. State-Court Compl. ¶ 11.) The Comers further allege that Cable and Moore breached these warranties. (*Id.* at ¶ 13.) Nationwide, after noting that "[t]here is no West Virginia decision discussing whether or not a breach of an express warranty constitutes an occurrence under a homeowners insurance policy," asserts that the reasoning from my prior opinion suggests that a breach of an express warranty, like a breach of an implied warranty of habitability or fitness, is not an occurrence. (Nationwide's Mem. At 4.)

After searching West Virginia case law, I have not been able to find a case directly on point. In *Webster County Solid Waste Authority v. Brackenrich & Associates*, 617 S.E.2d 851 (W. Va. 2005), however, the West Virginia Supreme Court of Appeals affirmed the Circuit Court of Webster County, which held that an alleged breach of an express warranty was not an occurrence under a CGL policy. 617 S.E. 2d at 854. Moreover, "occurrence" is defined by Cable and Moore's insurance policy as injury resulting from an accident, and at least one state court has held that breach of an express warranty does not involve accidental conduct. *Yegge v. Integrity Mut. Ins. Co.*, 534 N.W.2d 100, 102-03 (Iowa 1995.)

Most importantly, warranties, whether they be express or implied, are contractual in nature, and the West Virginia Supreme Court of Appeals held in *State Bancorp, Inc. v. U.S. Fidelity and Guarantee Insurance Co.*, 483 S.E.2d 228 (W. Va. 1997), that a breach of contract "is not an event

that occurs by chance or arises from unknown causes," and thus is not an accident. 483 S.E.2d at 234. Consequently, the court held that a breach of contract is not an "occurrence" when the term is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Because Cable and Moore's insurance policy defines occurrence in terms of an accident, breach of an express warranty is not an occurrence under that policy. I therefore **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Count II of the Comers' state-court complaint.[1]

B. Counts III, IV, V, VI, and IX of the State-Court Complaint

In Count III of the Comers' state-court complaint, they allege that Cable and Moore knew or should have known of defects in the house and failed to disclose these defects prior to sale of the house. (Am. State-Court Compl. ¶ 17.) Count IV alleges that Cable and Moore engaged in fraudulent misrepresentation. (*Id.* at ¶ 25.) Count IV also alleges fraudulent misrepresentation; the Comers' contend that contract rescission is the only adequate remedy for the damages they suffered due to fraudulent misrepresentation. (*Id.* at ¶ 31-32.) In Count IX, the Comers allege that Cable and Moore's failure to disclose known defects in the house constituted negligence. (*Id.* at ¶ 46.)

---

[1] It is well-settled in West Virginia that "[a]n insurance company's duty to defend an insured is broader than the duty to indemnify under a liability insurance policy." *Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 912 (W. Va. 2004). "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W. Va. 1986). Here, however, the Comers' damages are pecuniary in nature and do not constitute property damage or bodily injury. As a result, the allegations in the Comers' complaint do not meet the "reasonably susceptible" standard, and the duty to defend is not triggered for any of the counts in the Comers' complaint. *See Erie Ins. Property & Cas. Co. v. Smith*, Case No. 5:05-cv-1137, 2006 WL 3733319, at *4 (S.D. W. Va. Dec. 15, 2006) (Johnston, J.).

Liability arising from these counts is not covered by Cable and Moore's insurance policy. In *Aluise*, the court held that based on the "overwhelming authorities," "a homeowner's policy defining 'occurrence' as 'bodily injury or property damage resulting from an accident' does not provide coverage for an insured homeowner who is sued by a home buyer for economic losses caused because the insured negligently or intentionally failed to disclose defects in the home." *Aluise*, 625 S.E.2d at 268-69. The court in *Aluise* also noted the well-recognized principled that "damages flowing from misrepresentation and/or fraud have no basis as property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by homeowners policies." *Id.* at 268 (citing *State Farm Fire & Cas. Co. v. Brewer*, 914 F. Supp. 140, 142 (S.D. Miss. 1996). The allegations set forth in Counts III, IV, VI, and IX involve intentional and negligent failure to disclose and misrepresentation, and therefore are do not involve an occurrence. I **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Counts III, IV, VI, and IX of the Comers' state-court complaint.

Nationwide includes Count V in its discussion of why failure to disclose and fraudulent misrepresentation are not covered by Cable and Moore's insurance policy. Count V does not, however, allege either failure to disclose or fraudulent misrepresentation. Instead, the Comers allege in Count V that they are entitled to rescission as a remedy for Cable and Moore's alleged breaches of contract. I have already found that breaches of contracts are not accidents and therefore not occurrences as defined by Cable and Moore's insurance policy. Thus, I **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Count V of the Comers' state-court complaint.

C. Counts VII and X of the State-Court Complaint

In Count VII, the Comers claim that "[a]s a result of said . . . failure of Defendants Cable and Moore to construct said house in a workmanlike manner, Defendants Cable and Moore violated their duty to Plaintiffs to exercise reasonable care and skill in the construction of a building." (Am. State-Court Compl. ¶ 35.) According to the Comers, the "actions of Defendants Cable and Moore in failing to construct the house in a workmanlike manner constitute negligence." (*Id.* at 36.) Count X alleges that Cable and Moore engaged in negligent hiring when they hired Cathey to excavate the building site. (*Id.* at ¶ 51.)

Nationwide argues that because negligent repair is not a cause of action that falls within the scope of "occurrence," negligent construction does not either. (Nationwide's Mem. 6.) Nationwide also cites authorities for the proposition that poor workmanship is not covered by liability insurance policies. (*Id.* at 6-7.) Nationwide does not discuss specifically the negligent hiring allegation.

In *Aluise*, the complaint alleged "property damage as a result of negligent repair," as well as negligent failure to disclose. 625 S.E.2d at 270. The court held that "these allegations simply do not fall within the scope of the policy." *Id.* Thus, it appears that negligent repair is not an occurrence under a liability policy defining occurrence in terms of an accident. Because there is no meaningful distinction between negligent repair and negligent construction, an allegation of negligent construction would likewise not fall within the coverage of a homeowner's insurance policy.

Moreover, I noted in my previous opinion that in the CGL policy context, "[p]oor workmanship, standing alone, cannot constitute an 'occurrence' under the standard policy definition of this term as an 'accident including continuous or repeated exposure to substantially the same general harmful conditions.'" *Corder v. William W. Smith Excavating Co.*, 556 S.E.2d 77, 83 (W.

Va. 2001). This is because liability insurance policies are not designed to "insure the work or workmanship which the contractor or builder performs. They are not performance bonds or builders' risk policies. CGL policies, instead, insure personal injury or property damage arising out of the work." *Erie Ins. Property & Cas. Co. v. Pioneer Home Improvement, Inc.*, 526 S.E.2d 28, 33 (W. Va. 1999). If the house at issue in this case had collapsed and destroyed the Comers' car, then there might be an occurrence covered by Cable and Moore's homeowner's insurance policy. *See id.* (citing an example from *Weedo v. Stone-E-Brick, Inc*. 405 A.2d 788, 796 (1979)). This hypothetical situation is not, however, the sort of negligence about which the Comers are complaining. They are instead complaining that they did not get the house for which they bargained. As a result, I **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Count VII of the Comers' state-court complaint.

As for the negligent hiring allegation, there is no reason to believe that the alleged failure of Cable and Moore to hire a competent excavation contractor is an occurrence when, as is the case here, even negligent excavation itself would not be an occurrence. Under West Virginia law, the act of sale does not make a homeowner's insurer the warrantor of the condition of the insured property. *Aluise*, 625 S.E.2d at 269 (citing *Lawyer v. Kountz*, 716 So.2d 493, 498 (La. Ct. App. 1998)). Given this rule, it would make little sense to have a homeowner be responsible for the policyholder's hiring practices. Consequently, I **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Count X of the Comers' state-court complaint.

D. Count VIII of the State-Court Complaint

In Count VIII, the Comers allege that the house they bought from Cable and Moore contained latent defects that were not discoverable via reasonable inspection. (Am. State-Court

Compl. ¶ 41.) According to Count VIII, the existence of these defects "constituted a breach of the implied warranty of habitability and fitness by Defendants Cable and Moore." (*Id.* at ¶ 42.) In my Memorandum Opinion and Order of October 22, 2007, I found as a matter of law that Nationwide has no obligation to indemnify Cable and Moore for damages arising under Count I of the state-court complaint. Count I, like Count VIII, deals with the implied warranty of habitability of fitness. My reasoning in my prior opinion controls, and I **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Count VIII of the Comers' state-court complaint.

E. Cross-claim

In the state-court proceeding initiated by the Comers, Harold Cathey filed a cross-claim against Cable and Moore, alleging that he is entitled to indemnification or contribution from Cable and Moore if he is found liable to the Comers. (Cross-cl. ¶ 4-5.) The record is silent regarding an express indemnification agreement between Cable and Moore and Cathey, so Cathey's claim for indemnification must be based on the principle of implied indemnification. The implied indemnification theory is based on "the premise that the person seeking to assert implied indemnity has been required to pay damages caused by a third party." *Sydenstricker v. Unipunch Prod., Inc.*, 288 S.E.2d 511, 446 (W. Va. 1982). Contribution, on the other hand, "arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his pro tanto share of the obligation." *Id.* at 447-48.

It is apparent, then, that Cathey's entitlement to either indemnification or contribution depends on a finding that the Comers were harmed by Cable and Moore alleged in the complaint. I have already found that Nationwide need not indemnify or defend Cable and Moore for liability

arising from these counts. Thus, I **FIND** as a matter of law that Nationwide has no duty to indemnify or defend Cable and Moore for any liability arising from Cathey's cross-claim.

**IV. Conclusion**

The plaintiff's unopposed motion for summary judgment is **GRANTED**. The court **DECLARES** that Cable and Moore's homeowner's insurance policy, issued by Nationwide, does not cover the claims and damages alleged by the Comers in their state-court complaint or alleged by Cathey in his cross-claim. The court further **DECLARES** that Nationwide has no duty to defend Cable and Moore against the claims set forth in Counts II through X of the Comers' state-court complaint or against Cathey's cross-claim.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 27, 2008

Joseph R. Goodwin, Chief Judge